## Cumberland Pipe Line Company v. Commonwealth.

(Decided May 25, 1926.)

### Appeal from Clay Circuit Court.

1. Nuisance—Charge of Maintaining by Pipe Line Leaking Oil Requires Showing of Willfulness or Culpable Negligence.—To sustain criminal charge of maintaining nuisance by maintenance of pipe

line from which oil escaped into creek, it was necessary to show defendant willfully turned oil into creek, or knowingly permitted it to run into the creek, or was culpably negligent in not preventing its escape from pipe.

2. Nuisance—Owner of Pipe Line Held Not Insurer Against Escape of Oil Into Creek.—In prosecution for maintaining nuisance because oil escaped from pipe line into creek, in determining whether pipe was maintained in defective condition, law views transaction in light of human limitations, and will not place accused on plane of an insurer.

3. Nuisance—Owner of Pipe Line from which Oil Escaped Through Rust Hole Into Creek Held Not Guilty of Culpable Negligence Causing Nuisance.—Where oil leaked from steel pipe, laid across creek bottom, through rust hole, and leak was discovered in about a day and soon repaired, that pipe had been in use for some time and rust was present held not to show culpable negligence making defendant liable for maintaining nuisance.

4. Nuisance—Failure to Bury Pipe Line to Avoid Freezing and Leaking of Oil Into Creek Held Not Culpable Negligence Causing Nuisance.—That pipe, laid across creek bottom, from which oil escaped into creek when pipe froze, was not buried to avoid freezing, was insufficient to show culpable negligence making defendant liable for maintaining nuisance, since that would have interfered with proper inspection.

5. Nuisance—Pipe Line from which Oil Escaped Into Creek Held Not Public Nuisance, where Leaks were Immediately Repaired.—Evidence that oil escaped from pipe line laid on bottom of creek, was insufficient to show that pipe line owner maintained a public nuisance, where such escape was due to two leaks, one caused by rust and other caused by freezing, and each had been immediately repaired.

LEWIS, BEGLEY & LEWIS for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

This is an appeal from a judgment imposing on appellant a fine of $400.00 for creating and maintaining a public nuisance.

Briefly stated the facts alleged in the indictment are that the Cumberland Pipe Line Company did unlawfully make, create and maintain a common and public nuisance by knowingly emptying and causing to be emptied into and upon the waters of Goose creek, a running stream of Clay county, crude oil and other oil, and by knowingly emptying and causing to be emptied into said creek and a

hole on the bank of said creek many barrels of crude and other oil, and knowingly and carelessly and negligently suffering, allowing and permitting said oil to run out of its pipes and holes into the waters of said creek, and by knowingly, negligently and carelessly suffering, allowing and permitting a defective pipe that lay across the bottom of said creek to leak crude oil and other oil continuously for many months prior to the date of the indictment, which oil appellant did continuously for many months pump into said pipe, knowing at the time said pipe was defective and leaking oil continuously into said creek, thereby knowingly, negligently and carelessly polluting the waters of said creek, etc.

The evidence for the Commonwealth is as follows: Peter House was on the bridge that spans Goose creek about the middle of January, 1924. He saw oil over the water and smelled the odor, but did not know where the oil came from. The oil stayed on the water two or three days. He did not know whether stock would drink the water or not. Early in 1924, A. G. Neal crossed the foot bridge over the creek and the water was black with oil. The oil stayed on the water two or three days and on the second morning he was asked to fix the leak. J. L. Botner saw some oil on the stream in the year 1924 or 1923. He ate some of the fish and they tasted oily. He did not know where the oil came from. On cross-examination he stated he thought it was in the summer time. W. O. B. Lipps saw oil on the river in December, 1923, or January, 1924, and could smell the odor as he walked over the bridge. About fifty families lived near the creek. They watered their stock and fished there. The oil came from up the river and stayed on it for about two weeks. George Downey saw a black streak of oil on the water in June, 1923, and his horse refused to drink out of it. He did not know where the oil came from. Hugh Hornsby saw some of the oil on Horse creek, which empties into Goose creek. A pipe belonging to the Cumberland Pipe Line Company had burst. This was in June or July, 1923. His horse did not refuse to drink the water. In December, 1923, or January, 1924, he frequently crossed Goose creek, but did not see any oil on it. Steve Combs saw some oil on Goose creek from the Tan Yard branch over to the bend. This was some time in the winter before court. He also noticed some oil at Hima in the summer time. The stream was covered with oil and you could smell it from the road. The oil he saw

in the summer did not come from any break in Goose creek.

For appellant John W. Hall testified that he lived about 4½ miles below Manchester and fifty yards from Goose creek. He got a notice on January 25 that there was a leak on the Tan Yard branch. He was then at the pump station and it was Friday evening. He came to Tan Yard branch on January 26 to investigate the leak. He found the line had frozen and burst. He reported the matter to the district foreman who came on Sunday, the 27th, and they repaired the leak. Some oil had run out before he got there Friday evening. He did not do anything then as it was frozen and no oil was running out. No oil escaped between that time and Sunday morning when the leak was repaired. They could not have fixed the leak sooner. The line was a four inch steel pipe. It had been there for seven years and had never leaked any. Very little oil escaped through the leak. It was his duty to notify the company. There was another break in Horse creek in June, 1923. Someone fired the oil and burned the line in two. When he found it out it had not been broken over a day or so. He immediately reported the trouble and it was fixed just as soon as it could be fixed, within three or four days. This break was a rust hole break. The pipe line that crosses Horse creek and Tan Yard branch is the same line that crosses Goose creek near Manchester. Charlie Godsey, appellant's district foreman, was at his Somerset office and received notice from Mr. Hall of a break near Manchester on Saturday morning, January 26th. He told Hall to do what he could to fix it. He then left Somerset Saturday morning and got to Manchester Sunday morning. They went immediately to the break and saw the condition, went to the station, got the necessary tools and repaired the break. This was the Tan Yard branch, about a quarter of a mile from Goose creek. The break was caused by freezing, which was due to the zero weather prevailing on the 20th and 21st of January. It did not begin to thaw until the 24th and no oil could have leaked between the freezing and that time. He judged about 15 barrels of oil escaped before he arrived. This had gone down the Tan Yard branch and flowed off. It was impossible to fix the leak any sooner. Ordinarily the pipe will not freeze, but will freeze when there is water in it, and they had no means of knowing there was water in the oil. Alex Morgan noticed some oil on the stream in January, 1924.

The odor was not offensive and his horse did not refuse to drink. Robert Hatton crossed Goose creek several times in January, 1924. He saw a skim of oil on the water, but there was not a sufficient quantity to render the stream unfit for use. About the same time Roy House saw some oil on the water, but it was not sufficient quantity to pollute the stream or render it unfit for stock or other purposes. Oscar Barnett testified that he worked for appellant and came to Tan Yard branch on January 27, which was Sunday. Mr. Godsey, Mr. Hall and some other men were there. They found a break caused by freezing. They immediately took the pipe out and plugged each end. Some oil had escaped before their arrival, but it was not leaking when they got there. Water sometimes gets into the oil and when it does it will freeze. There was also evidence to the effect that the company had a man regularly employed whose duty it was to inspect the pipe and wire.

This is not a private action for damages, but a criminal prosecution for creating and maintaining a public nuisance. To sustain the charge it was necessary for the Commonwealth to show that appellant willfully turned the oil into the creek or knowingly suffered and permitted it to run into the creek or was guilty of culpable negligence in not taking reasonable precautions to prevent its escape from the pipe line. The uncontradicted evidence shows that the escape of the oil was due to two leaks. The first occurred in the summer of 1923, was caused by rust and the oil was set on fire by some third party. The other occurred in the winter when the temperature was zero and was due to freezing. On each of these occasions the leak was promptly discovered and immediately repaired. It is at once apparent that appellant did not act willfully or knowingly, and equally apparent that it did not act negligently after the leaks were discovered. Therefore, the only ground on which it may be held liable is that it maintained its pipe line in a defective condition, or should have buried it in order to avoid freezing. In determining a question like this the law does not look to bare possibilities, but views the transaction in the light of the limitations that nature has placed on the human machine, and will not place the accused on the plane of an insurer. The pipe was of steel, and neither the fact that it had been in use for some time nor the presence of rust was sufficient to show that appellant was guilty of culpable negligence in not anticipating

that a leak would result or in not sooner discovering the presence of the leak. If it be said that the pipe should have been buried in order to avoid freezing, it must not be overlooked that this would have interfered with proper inspection and have made it impracticable for appellant to discover leaks due to other causes. For these reasons we are constrained to hold that the evidence was insufficient to show that appellant was guilty of creating and maintaining a public nuisance.

Judgment reversed and cause remanded for a new trial consistent with this opinion.